**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————

No. 16-20744
Summary Calendar

————

United States Court of Appeals
Fifth Circuit

**FILED**

June 13, 2017

Lyle W. Cayce
Clerk

In the Matter of: CLEVELAND IMAGING & SURGICAL HOSPITAL, L.L.C. also known as Doctors Diagnostic Hospital,

      Debtor

-----------------------------------------------------------------------------------------------------------------

CAMIL KREIT, Medical Doctor,

      Appellant

v.

CHRISTOPHER L. QUINN,

      Appellee

————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-2135

————

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

No. 16-20744

PER CURIAM:*

Appellant Dr. Camil Kreit appeals the district court's denial of his motion to extend the court's filing deadline and the court's subsequent denial of his motion for leave to file out of time. We affirm.

## I. BACKGROUND

Dr. Kreit is a member and manager of Cleveland Imaging & Surgical Hospital, LLC (the "Hospital"). Following a dispute among the Hospital's doctors in Texas state court, the court appointed a receiver, Douglas Brickley, to manage the Hospital and its assets. Pursuant to the power the receivership order specifically granted him, Brickley filed for Chapter 11 bankruptcy on the hospital's behalf, triggering the automatic stay provisions found in 11 U.S.C. § 362. After a series of unsuccessful bids, the bankruptcy court ultimately approved the Hospital's sale to CISH Acquisition, LLC ("Acquisition") over Dr. Kreit's objection. The bankruptcy court entered an order, the "Acquisition Sale Order," approving the asset purchase agreement on August 21, 2015. Because no party appealed the bankruptcy court's order, it became final and nonappealable on September 8, 2015.

Approximately two months later, on November 1, 2015, Dr. Kreit sent letters to the U.S. Deputy Attorney General, the U.S. Attorney's Office, and the Office of Policy and Coordination of the Federal Trade Commission, alleging that Dr. Kreit's fellow Hospital member, Dr. Ravi Kunar Moparty, had "divert[ed] funds," "embezzle[d] or conver[ted]" the Hospital's assets, and "engaged in a hostile acquisition of [the Hospital]," thereby "unlawfully depleting [the Hospital's] operating capital . . . [and] driving [it] into

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

bankruptcy." Dr. Kreit also sent a similar letter to Chip Roy, a First Assistant Attorney General for the State of Texas, making similar allegations and stating that Dr. Moparty "conspired with [Iberia Bank] by participating in fraudulent bidding, fixing a bid," engaging in "unlawful accommodation bidding," and effectively "eliminating" any competition in the bidding process. Dr. Kreit closed each letter by requesting "any available administrative remedy."

On November 16, 2015, Dr. Kreit e-mailed Christine March, the attorney for the U.S. Trustee, attaching a copy of each of the letters and restating his allegations. March then forwarded Dr. Kreit's e-mail to the Hospital's attorney. Consequently, the Hospital filed a show cause motion in the bankruptcy court on November 18, 2015, asking the court to hold Dr. Kreit in contempt for violating § 362(a)(3) and for his collateral attack on the court's prior orders, namely the Receivership Order and the Acquisition Sale Order. After a three day hearing, the bankruptcy court agreed with the Hospital and found that Dr. Kreit's letters violated § 362(a)(1), (3) and constituted an impermissible collateral attack on the court's prior orders.

On June 2, 2016, the bankruptcy court held another hearing on the amount of damages the Hospital incurred as a result of Dr. Kreit's conduct. At the hearing, Dr. Kreit's and the Hospital's counsel informed the court that they had reached an agreement; specifically the parties agreed that

> (1) the amount of damages incurred by the [Hospital] as a result of the Receiver spending time responding to Dr. Kreit's allegations totals $18,571.68; (2) the amount of attorneys' fees incurred by the [Hospital] for having to prosecute the Show Cause Motion is $26,428.32; (3) Dr. Kreit shall pay these sums by no later than August 2, 2016; and (4) if he fails to make payment by August 2, 2016, then he shall be liable to The Claro Group[, of which the Receiver is a principal,] for the amount of $24,742.50 and to [the Hospital's] counsel in the amount of $35,209.67.

No. 16-20744

The bankruptcy court concluded that Dr. Kreit had knowingly and willfully disregarded the automatic stay and the court's prior orders and imposed the stipulated damages.

On June 16, 2016, Dr. Kreit appealed the bankruptcy court's imposition of sanctions to the U.S. District Court for the Southern District of Texas. On September 14, 2016, the day before his appellate brief was due, Dr. Kreit moved to extend the filing deadline, which the district court denied. On October 7, 2016, three weeks past the deadline, Dr. Kreit moved for leave to file his appellate brief out of time. The district court again denied Dr. Kreit's motion and granted Appellee Christopher Quinn's motion to dismiss pursuant to Federal Rule of Bankruptcy Procedure 8018(a)(4). Dr. Kreit now appeals.

## II.    DISCUSSION

On appeal, Dr. Kreit challenges this court's jurisdiction to consider the the case. He also contends that the district court abused its discretion in denying his motion to extend the filing deadline and his motion to file out of time. We address each issue in turn.

### A.

Dr. Kreit challenges this court's jurisdiction to consider the bankruptcy court's sanctions order, arguing that the Texas state court that appointed Brickley as receiver over the Hospital lacked the authority to give him managerial authority. According to Dr. Kreit, although the Texas court had authority to appoint a property receiver, it did not have the authority to appoint Brickley as a rehabilitating or liquidating receiver, thereby depriving him of the ability to file for bankruptcy. Therefore, Dr. Kreit argues, because Brickley lacked the authority to file for Chapter 11 bankruptcy on the Hospital's behalf, neither the bankruptcy court, the district court, nor this court have jurisdiction over the case. Quinn counters, arguing that the *Rooker-Feldman* doctrine deprives this court of jurisdiction to review a state court

No. 16-20744

judgment. *See Aguiluz v. Bayhi* (*In re Bayhi*), 528 F.3d 393, 402 (5th Cir. 2008) ("Under the *Rooker-Feldman* doctrine, the . . . federal courts are without any authority/power/jurisdiction to modify or reverse a judgment rendered by a state court . . . . [T]he state court's judgment—correct or not—is immunized by that doctrine from vacatur or any other restraints by the bankruptcy court, the district court, and this court."). Dr. Kreit responds by arguing that the *ab initio* exception to the *Rooker-Feldman* doctrine applies to this case, as his challenge to the Texas court's judgment is jurisdictional, and, therefore, does not ask this court to question a *valid* state court judgment.

This court has neither endorsed nor rejected the *ab initio* exception. *See Houston v. Queen*, 606 F. App'x 725, 732–33 (5th Cir. 2015). Our sister circuits are split on the issue. *See Keeler v. Acad. of Am. Franciscan History, Inc.* (*In re Keeler*), 273 B.R. 416, 421 (D. Md. 2002) ("There is a split among the circuits as to whether there is a narrow exception to *Rooker-Feldman* for state judgments that are void *ab initio*."); *compare James v. Draper* (*In re James*), 940 F.2d 46, 52 (3d Cir. 1991) (recognizing the *ab initio* exception) *and Singleton v. Fifth Third Bank of W. Ohio* (*In re Singleton*), 230 B.R. 533, 538 (B.A.P. 6th Cir. 1999) (same) *and Lake v. Capps* (*In re Lake*), 202 B.R. 751, 758 (B.A.P. 9th Cir. 1996) (same), *with Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003) ("acknowledg[ing]" but "not endors[ing]" the void *ab initio* exception) *and Ferren v. Searcy Winnelson Co.* (*In re Ferren*), 203 F.3d 559–60 (8th Cir. 2000) (per curiam) (declining to create a void *ab initio* exception to the *Rooker-Feldman* doctrine when a state court allegedly interfered with bankruptcy court jurisdiction) *and Casale v. Tillman*, 558 F.3d 1258, 1261 (11th Cir. 2009) (declining to adopt a void *ab initio* exception based on the state court's lack of jurisdictional authority) *and In re Thomas*, No. 04-26010, 2006 WL 5217796, at *3 (Bankr. D. Md. Feb. 21, 2006) ("The Fourth Circuit has not addressed a void *ab initio* exception to the *Rooker-Feldman* doctrine.").

No. 16-20744

We do not reach this issue, however, because it is clear that the Texas court had jurisdiction over the Hospital and its assets.  Under Texas law, "[w]here a trial court ha[s] jurisdiction of both the parties and the subject matter, the order appointing a receiver is not void." *Sclafani v. Sclafani*, 870 S.W.2d 608, 612–13 & n.4 (Tex. App.—Hous. [1 Dist.] 1993, writ denied).  Here, even assuming *arguendo* that the Texas court lacked the ability to create a particular kind receivership, that the court had the authority to create a receivership in general is indisputable.  *See* TEX. BUS. ORGS. CODE § 11.402 ("A court that has subject matter jurisdiction over specific property of a domestic or foreign entity that is located in this state and is involved in litigation has jurisdiction to appoint a receiver for that property . . . ."); *Whitaker Oil Co. v. Ward*, 396 S.W.2d 158, 162 (Tex. Civ. App.—Tyler 1965, no writ) ("The fact that [the receivership] was made improvidently, or issued on insufficient evidence does not nullify an order appointing a receiver.").  Moreover, the Texas court specifically vested Brickley with the authority to file for bankruptcy on the Hospital's behalf.  *See* TEX. BUS. ORGS. CODE § 11.406(a)(5) ("A receiver appointed under this chapter . . . has the powers and duties that are stated in the order appointing the receiver.").  Concluding that this court has jurisdiction over the appeal, we address the merits of Dr. Kreit's claims.

**B.**

"Our review of the actions of the district court in its appellate role is for an abuse of discretion." *In re Kelly Oil Co.*, 46 F.3d 66, 66 (5th Cir. 1995) (citing *In re Braniff Airways, Inc.*, 774 F.2d 1303, 1305 (5th Cir. 1985) (per curiam)).  Here, the district court did not abuse its discretion in dismissing the appeal for Appellant's failure to file a timely brief.  *See In re Braniff Airways, Inc.*, 774 F.2d at 1305 ("Bankruptcy appeals have frequently been dismissed for the appellant's failure to comply with the duty of diligent prosecution, and we have

dismissed civil appeals for failure of prosecution when the appellant's brief was not timely filed."). Accordingly, we AFFIRM.

## III.  CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's judgment in full.